# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| PERVEZ ROUF, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-2778 |
| | § | |
| CRICKET COMMUNICATIONS, INC., *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is plaintiffs' motion to remand (Dkt. 11), Defendant Cricket Communications, Inc.'s ("Cricket") motion to dismiss and motion to compel arbitration (Dkt. 5), and Cricket's motion to strike non-diverse defendants from plaintiffs' amended complaint (Dkt. 26). After considering the motions, responses, and applicable law, the court is of the opinion that the motion to remand should be DENIED, the motion to compel arbitration should be GRANTED, and the motion to strike should be DENIED as moot.

## I. BACKGROUND

This case involves a contractual dispute surrounding the operation of Cricket store locations. Plaintiff, Pervez Rouf, as President of PNK Wireless Communications ("PNK"), entered into a Premier Dealer Agreement ("Agreement") with Cricket in order to sell Cricket products and services from various store locations. Dkt. 1, Ex. A. On August 29, 2013, Cricket informed plaintiffs that it considered PNK in breach of the Agreement and, therefore, was terminating the Agreement. *Id.* Plaintiffs filed suit against Cricket on September 13, 2013 in state court alleging claims of anticipatory breach of contract and promissory estoppel. *Id.* Plaintiffs also sought injunctive relief in state court. *Id.* Plaintiffs maintain that Cricket has denied PNK access to the computer programs

necessary to operate their Cricket store locations, and therefore, they have had to close the stores. *Id.*

On September 20, 2013, Cricket timely removed this action to federal court on the basis of diversity jurisdiction. Dkt. 1. Cricket moved to compel arbitration on September 30, 2013, pursuant to the arbitration provision contained in the Agreement. Dkt. 5. On October 18, 2013, plaintiffs filed their first amended original complaint joining Syed Shahid Ali ("Ali") and Pervez Selim ("Selim") as defendants. Dkt. 10. Ali and Selim are residents of Texas. *Id.* at 2. The first amended complaint includes the identical allegations made in the original complaint except plaintiffs allege that Ali and Selim provided "false information" which caused Cricket to terminate the Agreement. *Id.* at 4. On the same day, plaintiffs also filed their motion to remand on the basis that the parties are not diverse because Ali and Selim are Texas residents. Dkt. 11 at 2.

## II. ANALYSIS

### A. Remand

The court turns first to plaintiff's motion to remand. "A court must be satisfied that it has subject-matter jurisdiction before dealing with any other matters." *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 560 (N.D. Tex. 2009). Original diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Thus, for the court to maintain diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).

Cricket timely removed this action to federal court on the basis of diversity jurisdiction.  At the time of removal, all parties were completely diverse.  Plaintiffs, thereafter, sued two Texas residents upon which they now base their argument that the court lacks diversity jurisdiction because Ali and Selim are Texas residents.  The parties do not dispute that the amount in controversy satisfies the jurisdictional requirement; however, Cricket asserts that remand is improper because the plaintiffs added non-diverse defendants after Cricket filed its notice of removal in order to defeat diversity jurisdiction.

Generally, jurisdiction is determined at the time the suit is filed.  *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1180 (5th Cir. 1987).  An amendment to the complaint that adds a non-diverse party after removal will defeat jurisdiction, and the court must remand.  *Id.* at 1182 (citing 28 U.S.C. § 1447(c)).  However, when such an amendment occurs, the court "should scrutinize that amendment more closely than an ordinary amendment."  *Id.*  Consequently, the court must consider whether the joinder of the non-diverse party is proper.  *Id.*  It is within the court's discretion to determine whether a non-diverse party can be properly added to the suit after removal.  *Id.*  "Because the court's decision will determine the continuance of its jurisdiction, the addition of a nondiverse party must not be permitted without consideration of the original defendant's interest in the choice of forum."  *Id.*

An amendment that would destroy diversity and divest the court of jurisdiction is governed by 28 U.S.C. § 1447(e).  *Hensgen*, 833 F.2d at 1182; *Gallegos v. Safeco Ins. Co. of Ind.*, 2009 WL 4730570, *2 (S.D. Tex. 2009).  Under Section 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  When

3

considering such amendment, the court should address the following factors in its analysis: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if the amendment is not allowed; and (4) any other equitable factors bearing on the amendment.  *Hensgen*, 833 F.2d at 1182.

As to the first factor whether the amendment was meant to defeat jurisdiction, courts often consider "whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed."  *Gallegos*,  2009 WL 4730570, at *3 (citing *Tomlinson v. Allstate Indem. Co.*, 2006 WL 1331541, *3 (E.D. La. 2006)).  Further, if the plaintiff moves to amend his petition to add a non-diverse defendant after the notice of removal has been filed, some courts have considered this evidence tending to show a purpose to destroy diversity jurisdiction.  *Id.* at *4; *Karr v. Brice Bldg. Co., Inc.*, 2009 WL 1458043, *4 (E.D. La. 2009).

In their first amended original complaint, plaintiffs provide such little information about Ali or Selim and their conduct that the court cannot reasonably determine if plaintiffs should have originally sued these defendants.  The entirety of plaintiffs' allegations against Ali and Selim are that they provided the false information that led to the termination of the Agreement between plaintiffs and Cricket.  Dkt. 10 at 4.  It is apparent, however, that plaintiffs were aware of Selim since the inception of this lawsuit.  Selim provided a verification in support of plaintiffs' application for temporary restraining order in the state court proceeding, Dkt. 1, Ex. A.  Therefore, while the court is unable to discern the alleged wrongful conduct of Ali or Selim based on plaintiffs' failure to include any specific allegations against them, plaintiffs were clearly aware of Selim at the outset of

this litigation based on the verification submitted by Selim in support of plaintiffs' motion for temporary restraining order against Cricket. *Id.*

Further, the simultaneous filing of plaintiffs' amended complaint and motion for remand after the notice of removal was filed suggests that the purpose of the amendment was to defeat jurisdiction. *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 1491422, *5 (N.D. Tex. 2010).  Plaintiffs have provided no reason as to why Ali and Selim were not sued in the original complaint or how it came to be discovered that they were proper defendants.  Given the lack of detail surrounding the allegations made against Selim and Ali, the lack of explanation as to why Selim and Ali were not sued originally, and the timing of the filing of plaintiffs' amended complaint and motion to remand, the court finds that the plaintiffs' amendment was made for the purpose of defeating jurisdiction.

For many of the same reasons, the court also finds that plaintiffs' amendment is dilatory. While courts generally will not find an amendment dilatory when no trial or pretrial deadlines have been scheduled or no significant activity has occurred in the case, the analysis is different in circumstances where diversity jurisdiction is at issue.  *Gallegos*, 2009 WL 4730570, at *4.  For instance, "[a] delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory."  *Irigoyen v. State Farm Lloyds*, 2004 WL 398553, *5 (S.D. Tex. 2004); *Phillips v Delta Air Lines, Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001). Here, plaintiffs amended their complaint over a month after the case was originally filed and one month after the notice of removal was filed.  Plaintiffs did not significantly delay the amendment, but the length of the delay coupled with the timing of the amendment convinces the court the plaintiffs were sufficiently dilatory to preclude joinder of non-diverse defendants.

The court must also consider the potential prejudice plaintiffs may suffer if they are not allowed to amend. Courts addressing this issue often consider whether the named defendant would be unable to satisfy a future judgment. *Gallegos*, 2009 WL 4730570, at *5; *O'Connor v. Auto. Ins. Co. of Hartford Conn.*, 846 F. Supp. 39, 41 (E.D. Tex. 1994). Conversely, courts also look to plaintiff's likely recovery from the proposed non-diverse defendant. *Gallegos*, 2009 WL 4730570, at *5; *Irigoyen*, 2004 WL 398553, at *5. Cricket is a wireless telephone carrier with "a national presence," and there is no evidence to support the conclusion that Cricket would be unable to satisfy any judgment against it. Dkt. 27 at 1. There is also no evidence that the non-diverse individual defendants would be liable in this case for breach of an agreement to which they were not parties. This case centers around the termination of the Agreement between plaintiffs and Cricket. While plaintiffs have provided almost no detail about Ali or Selim's involvement in this dispute, it is unlikely that recovery from two individual defendants who were not party to the Agreement would be anything that could not be recovered from Cricket.

Finally, the court must take into consideration any other equitable factors relating to the amendment. The parties do not identify any additional equitable factors which have not already been addressed by the court. Thus, considering the relevant *Hensgens* factors, the court finds that the proposed amendment is primarily for the purpose of defeating diversity jurisdiction, plaintiffs were somewhat dilatory in amending their complaint, and plaintiffs will not be prejudiced by denial of the amendment. Because no other equitable considerations warrant an amendment in this case, the court strikes plaintiffs' first amended original complaint as an improper attempt to join non-diverse defendants. The court finds that it has federal diversity jurisdiction over this cause of action and denies plaintiffs' motion to remand.

### B.      Arbitration

The Federal Arbitration Act ("FAA")[1] provides that a written agreement to arbitrate, in a contract involving interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The court confronts two questions when presented with a motion to compel arbitration. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). First, the court must determine whether there is a valid agreement to arbitrate based on "ordinary state-law principles that govern the formation of contracts." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995)). Second, the court considers whether the dispute in question falls within the scope of the arbitration agreement. *Id.* The second inquiry is governed by the "federal substantive law of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)). The FAA expresses a presumption in favor of arbitration, and any doubts concerning the scope of arbitration should be resolved in favor of arbitration. 9 U.S.C. § 2; *Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the dispute is outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

Plaintiff asserts several arguments challenging the validity of the arbitration clause in the Agreement. The parties do not dispute that Tennessee law governs this dispute as provided in

---

[1] The parties do not dispute, and the court agrees, that this arbitration agreement is governed by the Federal Arbitration Act because it involves interstate commerce. Dkt. 5 at 3; Dkt. 12 at 4. Additionally, the arbitration clause in the parties' agreement specifically invokes the FAA. Dkt. 15 at ¶ 11(h).

Paragraph 11(i) of the Agreement.  Dkt. 5 at 4; Dkt. 12 at 3.  In Tennessee, there is a presumption "in favor of the validity and regularity of a written instrument, and the person asserting its invalidity has the burden of proving his allegations by clear and satisfactory evidence."  *Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 531 (Tenn. Ct. App. 2001).

The parties voluntarily entered into the Agreement on May 20, 2011.  The Agreement contains an arbitration provision that states:

> Arbitration.   Except with respect to a breach of the obligations of confidentiality, collection matters, non-competition, use of Marks and actions detrimental to the business of Cricket, as to which Cricket shall have the right to seek injunctive remedy or other equitable remedies it deems reasonable and appropriate, all disputes arising out of this Agreement shall be resolved by arbitration conducted in Franklin, Tennessee in accordance with the Rules of the American Arbitration Association. . . . To the extent not specifically provided herein, all arbitrations hereunder shall be governed by the Federal Arbitration Act.

Dkt. 15 at ¶ 11(h).

Despite the clear dictates of the Agreement, plaintiffs claim the arbitration agreement is unconscionable because it was a contract of adhesion.  The Supreme Court of Tennessee has defined an adhesion contract as being "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract."  *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996).  A contract, however, is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis; rather, there must be an "absence of a meaningful choice for the party occupying the weaker bargaining position."  *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 501-02 (6th Cir. 2004).

8

Plaintiff Pervez Rouf ("Rouf"), on behalf of PNK, has not shown that he was in a weaker bargaining position or that he did not have a meaningful choice as to whether to enter into the Agreement. Rouf owns and operates several business entities. Dkt. 1, Ex. A. Specifically, under this Agreement alone, Rouf appears to be a competent business man involved in the operation of 12 wireless phone store locations in Houston and San Antonio. *Id.* He voluntarily entered into this Agreement with Cricket as a dealer of Cricket's products and services and has been operating under the terms of this Agreement since 2011. *Id.* Rouf was not required to enter into this transaction on a take-it-or-leave-it basis. There is no evidence that this was not anything more than an arms-length business negotiation between two business parties for the operation of 12 commercial retail stores.

Even if plaintiffs could show that the arbitration agreement was adhesive, they would also have to demonstrate that it was unconscionable under Tennessee law. Adhesion contracts are only unenforceable when the terms are "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski*, 919 S.W.2d at 320. A contract is unconscionable when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984).

Plaintiffs only challenge the procedural unconscionability of the arbitration clause based on their contention that there was unequal bargaining power between the parties. Rouf claims he is not an attorney and not a native English speaker. Dkt. 12 at 3. However, Rouf's business experience belies any argument he was unable to read or understand the arbitration provision in the Agreement. The arbitration provision is clearly labeled and underlined. Dkt. 15 at ¶ 11(h). Rouf is not illiterate

9

and does not need to be an attorney to understand the arbitration provision. *See Plyer v. BDO Seidman, L.L.P.*, 2004 WL 5039850, \*5 (W.D. Tenn. 2004) (noting plaintiffs were not illiterate and may not be experienced tax lawyers, but were competent enough to understand the dispute resolution provision). There is no evidence that Rouf was tricked or otherwise forced into entering into this Agreement.

Plaintiffs further claim there was inadequate consideration for the arbitration provision. Under Tennessee contract law, "[m]utuality of promises is 'ample' consideration for a contract. A mutual promise 'in itself would constitute sufficient consideration.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2008) (quoting *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001)). The arbitration provision contained in the Agreement is binding on both parties for all disputes arising under the contract (with limited exceptions) regardless of which party presents the claim. Dkt. 15 at ¶ 11(h). Because both parties were equally obligated to arbitrate disputes arising from the Agreement, this is "enough to ensure mutuality of obligation and thus constitute consideration." *Seawright*, 507 F.3d at 974.

Lastly, plaintiffs argue that the parties did not have a meeting of the minds with regard to the arbitration clause. However, the contract provides in bolded language in the paragraph preceding the signature lines that "[t]he undersigned Dealer has read, and understands and agrees to be bound by, each of the provisions in this Agreement." Dkt. 15 at 25. Rouf's signature reflects plaintiffs' assent to the terms of the Agreement. *See Staubach Retail Servs.-Se. v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (mutual assent is determined by an objective analysis of the party's expressions). If a person "fails to read the contract or otherwise learn its contents, he signs the same at his peril and is estopped to deny his obligations, will be conclusively presumed to know the

10

contents of the contract, and must suffer the consequences of his own negligence." *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993). Plaintiffs cannot now claim they lacked awareness or understanding of the arbitration provision in an attempt to avoid the consequences of the terms of the Agreement.

Plaintiffs also assert that the claims at issue do not fall within the scope of the agreement. Plaintiffs rely on the exceptions provided in the arbitration provision and attempt to characterize their causes of action as those specifically excepted. The arbitration provision, however, is clear. It states that "*all* disputes arising out of this Agreement shall be" decided by arbitration, "[e]xcept with respect to a breach of the obligations of confidentiality, collection matters, non-competition, use of Marks and actions detrimental to the business of Cricket, as to which Cricket shall have the right to seek injunctive remedy or other equitable remedies it deems reasonable and appropriate." Dkt. 15 at ¶ 11(h) (emphasis added). As reflected in the original complaint, plaintiffs' claims for anticipatory breach of contract and promissory estoppel stem entirely from Cricket's termination of the Agreement. Rouf maintains he has "performed his obligations under the contract" and "[d]efendant's nonperformance is a breach of the parties' contract." Dkt. 1, Ex. A at 3. The claims strictly fall within the purview of the arbitration clause and not within any of its exceptions. While the court has no doubt that plaintiffs' claims fall within the arbitration provision, the court must resolve any doubts concerning the scope of arbitration in favor of arbitration. *See* 9 U.S.C. § 2; *Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998).

Therefore, plaintiffs have failed to meet their burden demonstrating that the arbitration agreement was invalid or the dispute falls outside of the scope of the agreement. Plaintiffs have presented only conclusory allegations that the parties' arbitration clause is unenforceable. *Overstreet*

*v. Contigroup Cos., Inc.*, 462 F.3d 409, 412 (5th Cir. 2006) (finding plaintiff failed to carry the burden of showing that the dispute was not arbitrable because plaintiff "failed completely to address the circumstances existing at the time the contract was made").   Rouf voluntarily signed the Agreement to enter into a business transaction with Cricket containing an arbitration clause.   The arbitration clause is not buried in the contract or otherwise unfair to either party.   Consequently, the court finds that plaintiffs' claims are subject to arbitration, and Cricket's motion to compel is granted.

### C.  Dismissal

Cricket seeks dismissal of this case in lieu of a stay pending the outcome of arbitration. Section 3 of the FAA provides that, upon a showing that the issues involved in an action are properly referable to arbitration, the court "shall . . .  stay the trial of the action until arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.   However, the Fifth Circuit has instructed that Section 3 of the FAA does not limit dismissal of a case if all of the issues raised in the district court are arbitrable.  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).   Because the court has disposed of plaintiffs' claims for equitable relief in a prior order and all of the plaintiffs' remaining claims in this suit are arbitrable, this suit will be dismissed without prejudice.

### III. Conclusion

Therefore, plaintiffs' motion to remand (Dkt. 11) is DENIED based on their improper joinder of non-diverse defendants. Plaintiffs' First Amended Original Complaint (Dkt. 10) is hereby STRICKEN from the record. Further, Cricket's motion to dismiss and motion to compel arbitration (Dkt. 5) is GRANTED. Cricket's renewed motion to dismiss and motion to compel arbitration (Dkt. 22) based on plaintiffs' first amended complaint is hereby DENIED as moot. Cricket's motion to strike non-diverse defendants from plaintiffs' amended complaint (Dkt. 26) is also DENIED as moot. This matter shall be submitted to binding arbitration pursuant to the terms of the Premier Dealer Agreement, and plaintiffs' claims against Cricket are DISMISSED without prejudice.

It is so ORDERED.

Signed at Houston, Texas on November 19, 2013.

Gray H. Miller
United States District Judge

13